Good morning and may it please the court. My name is Jamie Lau appearing on behalf of Petitioner Lamont McKoy. The issue before this court is whether new evidence not presented at trial make it more likely than not that no reasonable juror would find Mr. McKoy guilty beyond a reasonable doubt. New evidence shows that Myron Haley was shot in another part of Fayetteville, Groveview Terrace, by another person, William Talley. The evidence was first developed during a federal investigation into Fayetteville's Fort Boys games. Groveview Terrace and Haymont Hill, where McKoy was elected, have shot Haley at different locations and the vehicle containing Haley's body was found down an embankment approximately equidistant from both. The two versions of Haley's murder are irreconcilable and no reasonable juror would convict McKoy on the facts before this court. That the actual innocent standard is met here is supported by evidence that would make any reasonable juror doubt the state's case. The Fayetteville Police Department's Special Response Unit was present at the very location and time that the state alleged that McKoy committed the murder. This evidence renders the state's case at trial impossible and any juror hearing it would have doubt given that the state's case relied on a single witness with no physical evidence. Additionally, it is now known that the state suppressed information identifying another individual, William Talley, as the perpetrator. And the record shows that 10 people now, including two who have testified under oath in federal court, sharing a consistent account of Talley, not McCoy, shooting Haley. The remarkable thing is that the state, knowing that Talley was identified- Can I go back? Was the information that the officers were at that location, was that available at the time of trial or when, how did that come up? Well, two things, Your Honor. First, it was not presented at trial and the standard by this court under Finch is whether or not, for new evidence, is whether or not it was evidence presented at trial. However, it was not known to counsel that the Special Response Unit from the Fayetteville Police Department had went to the scene on Branson and Bryant Street in Haymont Hill where Mr. McCoy is alleged to have committed the crime and was there till at least 1241 a.m. on January 26, 1990. There was people from Haymont Hill who said that police officers had went up to that area after an earlier shooting that night that took out a transformer, but there was no indication from those people that were spoken with with regards to just how long the police were present up there. Additionally- When's the best evidence about the placement of the time of the murder in this case? Well, the witness that testified with regards to the placement of time is an individual named Bobby Wade and he testified that on the night of January 25th, he anchored his testimony to the night of January 25th because he knew he was doing court-mandated community service that night. He came home from his court-mandated community service and after that took a shower and went out. He then testifies that he spoke with an individual named Lonnie McNeil and that while he was talking to Mr. McNeil, Myron Haley walked up and told him that he was looking for an individual who had been involved in a drug transaction and they walked to the arcade, went inside, very explicitly stated, they went inside that arcade and looked around. What discredits him? I know all about that. In other words, the arcade had closed because of power outage and that type of thing. But I'm trying to figure out how do we place the timing. That witness had, you pointed out a lot of problems with that witness. The best evidence we have of the timing is what was testified to at trial. And what was testified to at trial was that this occurred on the night of January 25th. It's ubiquitous throughout trial. The police felony investigative report that was completed by Detective Ballard, who also testified at trial, said that the crime occurred between 11 p.m. and 12 a.m. on the night of January 25th. So every indication... Is that the only evidence of when the murder was committed at trial? I'm trying to, I'm asking this basically to see whether it, how relevant it is whether the officers were there. In other words, that subsequent evidence that the officers were actually at that point. If the murder was committed, obviously, at 2 o'clock or 1 o'clock in the morning, then that would be irrelevant. Well, this court has to view the totality of evidence and how a reasonable juror would react to the totality of evidence. And you just pointed out that the state's lone witness in the case has a host of problems. But the state's case at trial, the record, when you look at... How does the state's witness have a host of problems? I don't understand that because all the past misdeeds that you complain about on witnesses, on Williams' part, and the criminal record of Williams, that was all before the jury. And he passed a polygraph and he was still found credible. And there were other witnesses that supported his account. And you have Charles Williams Jr. And I don't know what the other person's name is. Kibby Johnson supported Mr. Williams' account. And you can always find, after trial, some kind of additional evidence here and there. But it seems to me that we're reducing the role of the state jury, and we are reducing the role of the state Supreme Court, and we are in a case where we should be the very last ones to be overturning these kinds of jury verdicts that have been through round after round after round of review. Judge Wilkinson, I submit to you, we're not reducing those roles. We're doing precisely what the court asked this court to do in Supreme Court precedent in Shlup-Dello, 1st Dello, that was reaffirmed in 2013 in McQuiggin v. Perkins, and that is to look at the collective evidence, the totality of evidence available to us present day, and to determine what a probabilistic determination of what a reasonable juror would do in light of that evidence. That didn't happen at the magistrate in the court below here, and it never happened at the state level. The magistrate judge, if you're wondering, with regards to the problems with Mr. Williams himself, identifies a whole host of problems with his testimony in the magistrate's opinion recommendation on 2363 through 2369 in the joint appendix. So there's a lot. And with regards to those other witnesses you spoke about, Charles Williams, Tibby Johnson, the first thing with regards to Charles Williams is he originally told law enforcement that all he knew about the case he learned from the to help him while he was in the Sampson County Jail, and only later did his statement suggest to support Williams, but also it was deeply problematic because it placed it on January 25th around 9 p.m. at the very time we know that it's impossible that Haley was being killed on Haymont Hill. Tibby Johnson was originally approached by Detective Ballard. Detective Ballard told him he needed to speak with him, people needed to start talking, or he was going to shut the drug trade down on the corner that Tibby Johnson was dealing drugs, presumably, and he first told him that Dennis Fort was the one that he saw shooting on the night of January 25th, 1990, not the account that later appears in Detective Ballard's felony investigative report. But all that evidence has to be weighed against the credible evidence from the federal task force investigation with regards to William Calley shooting Haley on the night of January 25th, 1990. And I want to point out this is where the state court proceedings went awry, went off the tracks. The state court proceedings went off the tracks because during the first motion for appropriate relief that was filed by Mr. McVoy, the state argued that the only thing that the evidence from the court poison investigation indicated was that another shooting occurred at some unknown time in Fayetteville, North Carolina. That was the state's argument. The state's, and you can see that on the joint appendix 690. What's deeply problematic, and I hope concerns this court, is at the time that the state is making that argument, it has in its possession undisclosed tips that it received from January 27th, the day after Myron Haley was found deceased, and January 28th, indicating that William Calley was the person responsible for Haley's death. The tips were a time stamp to show the state court that these were the same shootings that were being discussed. And those tips were only first revealed in 2018 after the conclusion of all the state court proceedings. And the last point I want to make goes to the state Supreme Court. The state Supreme Court has never weighed in on this evidence, this new evidence. The state Supreme Court, cited by the magistrate's recommendation, that says that the state Supreme Court can give credit that a jury, it doesn't say that statements Mr. McVoy made amounted to incriminating statements. It says that there was sufficient evidence that a jury could conclude that. That state Supreme Court decision cited was on direct appeal. Before any of this new evidence that now shows that William Calley was the person responsible for Haley's death. You have an MAR court for that, and you have the magistrate judge in the federal system for that. They looked at all of this. I mean, there are, you know, there are very few cases that there's not some after discovered evidence. It's always brought up. And I thought that Edward was passed to shut off these kind of claims because they just go on and on. And the Supreme Court makes schlop, which is what you're proceeding under. They emphasize that it's a very high bar. You have to say no reasonable jury could have voted to convict. And given Ballard's statement, the officer's statement that this individual confessed, McCoy confessed with a smirk on his face and a smile on his face. And given Williams's testimony and the attacks that were made on it, that eventually failed to persuade the jury of any kind of innocence. And some of McCoy's own witnesses in the federal evidentiary hearing undermined his case. And it's trying to prove that with this evidence, that no reasonable juror could have voted to convict. That's an awfully high standard. That's about as, you know, it's no, no reasonable juror could have voted to convict on that. Even if they found Williams to be credible, even if they found Ballard to be credible, even if they found the circumstantial evidence to be significant. Your Honor, if I may, what I'm asking this court to do is to have fidelity to the guidance that the Supreme Court has provided. The Supreme Court has said in these actual innocence gateway cases that the obligation of the court is to take into consideration all the evidence old and new without regard to admissibility and make a probabilistic determination of what a jury would do. Now you mentioned that this is a high standard. The Supreme Court does in fact say that it expects it to be the rare case where the actual innocence gateway applies. But I submit to you that there's a higher standard at play here. And it's the standard that the jury was asked to apply at trial without the benefit of all this other evidence that we now know of today, the credible court voice testimony. And you can find that standard in the joint appendix at 1759. When the jury was told that to find Mr. McCoy guilty by proof beyond a reasonable doubt, they have to have proof that fully satisfies or entirely convinces you of the defendant's guilt. Now I submit to this court emphatically that in light of the evidence that the federal investigators derived, indicating that William Talley was responsible for Haley's death, a reasonable juror giving consideration to that evidence could not fully satisfy themselves of Mr. McCoy's guilt when the only evidence that the state can present against him is evidence from Bobby Williams. But other individuals that support him, as we mentioned, we described in our reply brief, were deeply problematic and unreliable. Let me ask you about the confession, because it seems to me the state's case really centered on one witness and the confessions. And the one witness, we can talk about that, but that's fairly complex. But the confessions, tell me how that was, was the jury given the question whether those were confessions? Or it looked to me like the attorney may have said that he confessed and was arguing for manslaughter or something. And the instruction to the jury was that he had confessed, which didn't leave the issue for the jury to decide, especially in a case where the dialogue on that confession is sort of unique. He says, I know it, I know it, I know it, I know it, to various questions, as if he's saying he could have been, jury could have concluded saying, I know, I hear you, I hear you, as opposed to confessing to a crime. So I want to know, did the jury, was the jury presented with the question of whether he confessed? The jury was the statement that Mr. McCoy was said to have given to Ballard. The remarks of I know it were presented by testimony from Ballard. The jury was then charged that there is evidence tending to show that the defendant has admitted facts with respect to the crime, tended to show. So it was still up to the jury. What did the attorney say to the jury when he argued for manslaughter? When the attorney argued for manslaughter? Attorney for McCoy. He said that, and I don't have the exact words, but something to the effect that the jury could conclude this lesser charge, but he didn't ever acknowledge a confession on the part of Mr. McCoy himself. These remarks don't amount to a confession. They're not explicit with regards to any sort of admission of criminal conduct. And the jury was also asked through its charge to consider all the circumstances to decide what weight to afford the statement of Mr. McCoy. And that was unavailable to the jury. All these circumstances were unavailable to the jury. The credible evidence that Callie shot Haley would prevent any reasonable juror from concluding that that statement amounted to what the state now holds it up to be a confession. And with that, my time is up. I will reserve four minutes. Thank you. Thank you very much. May it please the court. My name is Kimberly Callahan, Special Deputy Attorney General for the North Carolina Department of Justice, and I represent the respondent in this matter. The actual innocence gateway should open only for rare and truly extraordinary cases, and this is not one of them. Lamont McCoy was a known drug dealer who had a violent reputation for shooting at cars and cheating people out of money by selling them counterfeit drugs. Could you lower your microphone just a tiny bit so that it's okay. Thank you. That's perfect. McCoy made incriminating remarks to Detective Ballard that can be reasonably construed as a direct admission to his involvement in the murder of Myron Haley. You know, that to me was pretty heavy evidence relied on by the state during the trial. Yes. If that evidence had not come in. Basically, the conviction would have rested on the testimony of Williams, right? That's correct, Your Honor. Yes. So if we're looking at the assessment of this case in view of the tally information, the late testimony of Williams and the testimony of Haley, it would be a different case, wouldn't it? I still believe that the case would have. You think with all that tally information and the test and the holes and Williams testimony, the jury would have convicted? Well, Your Honor, I'd like to talk about that. Well, I'm trying to focus on the it's a peculiar dialogue, and I'm not sure the person who asked the question, who was Ballard. Detective Ballard. Yes, Your Honor. Detective Ballard asked those questions, but he never wrote that down as a confession. He never made notes of that or anything, did he? But he did, Your Honor. It's in his felony investigative report. That he confessed? Not that he confessed, but his. I know, I know. The admissions that I know. And how was it treated at trial? That jury instruction that was presented to the jury. What was that instruction? It was an admissions instruction, but ultimately. What did it say? Roughly? That there were facts that he admitted to being involved in this crime. Something to that extent, Your Honor. He said the judge charged that tends to show. In other words, obviously he can't charge that the guy confessed. So it was ultimately left up to the jury to determine whether or not they believed that these statements, not only his statement, but his demeanor and in the context of what was going on here. I'll tell you what my reaction was to that and reading that is. Number one, I know it. Is not quite saying I did it. And he said the very same word to every question, and there were different questions about four of them. Maybe five of them. And he says, I know it. I know it. I know it. He didn't say I did it. He said, I know it. And it came across to me if somebody were doing this locally that he more likely was saying, I hear you. I hear you. I don't. I hear you. I know. I know. I know the words were exactly. I know it. I know it. I know it. But he used the very same response to every question. And then there was no follow up. And he never articulated any facts himself about what he did and how he did it. It's up to the jury to assign weight to that, isn't it, counsel? I mean, the jury can assign what weight to it they want. And my friend's arguments are good arguments, but they're good arguments to be made as a as a counter argument to on the part of the defense at trial. That's that's whatever whatever interaction there was between Ballard and McCoy was before the jury. They knew that was the testimony is to that. And that could have been that could have been tested. But the person to the weight to that, that's got to be a jury function, if anything is. Yes, your honor. And I think it's important to to know that he was saying, I know it in the context of being accused of previously shooting at vehicles and being the shooter in this case. And he was saying, I know it and smirking. And his demeanor changed very quickly when he tried to test Detective Ballard and say, well, what kind of bullet is it? And he rightfully said a three fifty seven magnum. His demeanor immediately changed and he got out of the vehicle. So I think you have to take all of that in the context. It's not just his response, but it's the change in his demeanor. Detective Ballard testified that he believed at the trial and at the federal evidentiary hearing that he believed that this was an admission of guilt. And the magistrate judge and the district court credited that testimony. And so the at this point, the petitioner has to show by clear and convincing evidence that that wasn't an admission. And the only thing he has come up with is, well, I was just, you know, smarting off. Well, how do we take that evidence presented by the federal task force? I'm sorry, could you repeat? How do you assess? I mean, how you dismiss the evidence presented by the task force that tallied it? Well, your honor, because the tallied evidence for. Two people that testified at the federal trial could not name the date or the time at when this occurred. I'm talking about the federal task force. They did an investigation and concluded that Talia didn't shoot him. And that's the way they did not. And they late and they had about ten or ten people sort of confirm that that's I would take issue with that. OK, that's what I want to hear. That's what I want to hear. Sure. Task force turned over information to the ADA in this case. They said this is what we have found through our investigation. We believe that there could be some information. The assistant U.S. Attorney wrote a letter to the district attorney and said, here's all the information that we have. I don't believe it is enough to exonerate McCoy or to implicate Talia. There are problems with the Talia evidence. As I said, the two persons who testified couldn't name the date. They couldn't name the time of the shooting. They couldn't name the victim. And so there is you have that evidence on one hand. And the magistrate and the district court said, well, it's a plausible theory, but there's more evidence in the record that supports Williams eyewitness testimony and McCoy's admissions to detect Ballard. You have Charles Williams, who did not say it happened at 9 o'clock. He said it happened between 11 and he saw them standing on the corner around 11 or 12. And that approximately 30 minutes later, he heard gunshots and saw them running after a car. You have Kimby Johnson, who also made a statement that was virtually indistinguishable from Williams account. You have. One of the co-defendants, Charmaine Evans, who also gives an account that was virtually indistinguishable from Williams eyewitness testimony and stated that it was after the police had left the scene from the earlier shooting that was done by Dennis Forte and his boys that ran in his gang. I want to go back to the best evidence of the timeline of the murder in this case. The only timeline that was put before the jury was Williams testimony that this occurred sometime after the lights came back on. And we know from I thought there was testimony and officer placed it between 11 and 11 p.m. and midnight. That's in his his felony investigation. I don't believe that was presented at trial. No, Your Honor. No. The only evidence that was presented at trial was Williams testimony that this occurred sometimes after the lights came back on when the lights come back on 1115 and 1130. So it happened sometime after that. We don't know a definitive timeline of when these events came into motion. So it is very possible that this was confirmed even though it was a recanted statement that was confirmed by one of the co defendants in this case. But you know, but if you read Bobby Lee, Bobby Williams testimony, there's no way it is. Not if his times are correct, but if he did only what he said he did, that would put it between 11 and 11 and 12. Isn't that right? I mean, he said he got off work. He went home. He took a shower, maybe ate dinner and then went out, ran into the victim. And then all this happened. So I mean that obviously assuming he got off work at five or six or seven or whatever time it is, you can't follow that timeline and those things and then put the shooting to a two or three or four o'clock in the morning. Well, we haven't ever put it at four or five o'clock in the morning. It was always the only timeline that the state has ever relied on is something sometime after the lights had come back on. And like, as you said, we don't know. We don't know a precise timeline of what he did when he got home. He said he was talking to his friends. We don't know when he encountered Mr. Will or Mr. Haley. And then they went and walked down to the arcade. Just one question about that or one point about that. Detective Ballard testified that even though the arcade may have closed at 930 p.m. because the lights went out, that there were people who frequented that spot because it was a known area for. But they said they saw people inside. And he said he went inside. He did. And Detective Ballard said that it would not be uncommon for people to be inside of that store and that he had interviewed some people. He didn't identify them, but he had interviewed some people that said they went into that store after the lights had gone out. So it is not an impossibility that they did walk down to the arcade after the lights came back on, saw some people down there doing whatever they were doing. It was a known place for drug activity. So that does not make his version of events improbable. It simply doesn't. As for problems with the host of problems with Mr. Williams, as alleged by opposing counsel, as Judge Wilkerson pointed out, they heard all of this testimony about his criminal past, about his previous drug use. Let me ask you that. I understand all that. And if we were left with just assessing the evidence, it would be fairly straightforward. It may be more complex by the fact that we have this fairly coherent body of evidence that came in later relating to Talley. And then you go back and look, place that in juxtaposition with the evidence that was used to convict. And it seems to me it was basically the testimony of Williams and the confessions, which is not for a murder case. Maybe it's enough for the jury, but it's he protests and thinks he was wrongly convicted. And then all of a sudden we have all this evidence that this investigation and a lot of people supporting the robbery in this investigation indicated it was Talley. And that all makes a pretty coherent story. It changes. Then you start looking back at the original trial and say, you put all that together, how would a jury react? And I must say the most I've never seen a confession like that. I mean, usually ask him to say you sign a document. I did it. You got all kinds of other things. But basically the confession consists of about four or five statements of I know it. I know it. I know it. I know it. And that ends it. And Ballard didn't go back and say, oh, he confessed or anything. I know it was that interaction is came before the jury and the jury could assign to it what weight they wanted. But the interaction between Ballard and McCoy was before the jury with all of its strengths and weaknesses. And it's up to the jury to make a judgment on it and ascribe it possible whatever weight it deserves. And I'd like to also make a point that was up to the jury and also the jury credited Williams. Well, I agree. I don't disagree with that. I'm not arguing that we have to deliberate on this. And Judge Wilkinson makes, I think, a very good point on this. The question, though, is the jury didn't have a lot of stuff that came up later, starting with the tips that came in right afterwards and then the federal task force investigation and then the witnesses who were interviewed pursuant to that investigation. And I mean, I think I think the McCoy's whole argument here is the actual innocence based on subsequent on new evidence. And our task is when we look at new evidence is assess it together with the old evidence. And so I'm not suggesting the old evidence wasn't adequately evaluated by the jury and couldn't lead to conviction. Just a question of the overall effect of the assessment we have to make. Just a couple of points. Yeah. The point that I wanted to make is they they credited his testimony in light of other evidence of alibi and another theory of a different shooter. They still credited Williams version of events. That was a different guy named Fort Forte. Forte. As as for the Crimestopper tips, Ballard was adamant that they have always been in the he did follow up on those. He asked dispatch if there was any shots fired in Groveview Terrace that night. There was none, he said, with all the people that he talked to in his investigation. Were those tips made available to McCoy's lawyer? That's at this point, there's not been a finding whether they have or whether they weren't. It was an open file. I mean, the allegation they make is they didn't get him till 2018. That is the allegation. But even even if they didn't get them at that time, they had a follow up investigation on them and it didn't turn up any in exculpatory evidence. They found the one person who was named in the Crimestopper tips as little urban. And he said, I never saw this shooting. I have no information to give you. There was two other people that they talked to. But again, they they they don't know the date of when this shooting occurred. They don't know who the specific shooter was. And they the only thing that is right with all of this. The tally evidence was the location of the car that they could they could find that the location of was there evidence that McCoy's the gun that McCoy generally carried was a 22. That is what one of the co-defendants said. But Williams testified that he thought it was it could have been a 357 in the night when he saw the shooting occur. Miss Kelly and I want to ask you a question has to do with confessions and corroboration. The law, as you obviously know, is that there is a requirement that a person cannot be convicted on a statement alone. That's not corroborated. It must be some degree of corroboration to show the trustworthiness of the statement. Here's my question. Where a little statement made by the defendant, which is alleged to be to be a confession, is vague or uncertain as here where the person says, I know what I know what I know. And it's not a direct admission to the commission of the crime. Does the uncertainty and the vagueness of the statement require a greater degree of corroboration than would normally be the case? Well, the jury found that it was corroborated here. I'm asking you what the law is. What do you think the law is and whether or not there's a greater degree of corroboration required when the alleged confession is vague or uncertain or not direct or specific? Your Honor, I don't know of any case law that says that. I'm not certain on that. I mean, if a confession has to be corroborated, I would assume that any type of admission would also need to be corroborated and it wasn't this case. I couldn't hear your voice dropped at the end. I couldn't hear what you said. That his admissions and I don't believe the state has ever referred to it as a confession, but as an admission and incriminating remark. I believe it's the opposing counsel that wants to deem it as a confession. Well, the charge to the jury was it tended to be a confession? Well, it tended to show that he admitted facts that he was involved in the crime. Yes, Your Honor. That's a confession. Excuse me. I just thought that the interaction between Ballard and McCoy was not introduced as a non corroborated was not introduced as a confession and we all know the basic rules and an uncorroborated confession is not enough to convict on. I just thought it was another piece of evidence. The nature of the interaction was another piece of evidence, which when combined with Williams testimony and the circumstantial evidence involved was enough for the jury to weigh. It just has to be considered not in isolation, but in conjunction with everything else. These are very, very difficult for us to achieve the kind of understanding of a case that a jury has or even that a later M.A.R. court has or a later federal evidentiary hearing has and the Supreme Court, when it said that Schlupp was a very, very high bar as a gateway, took precisely that into account that they would always going to be attempts to undermine the court's in the finality of a criminal trial. They knew that there were always going to be attempts to scour the woods after the trial. And that is why I think that they wrote Schlupp in a way that left very little room for evidentiary rehashes such as we are undertaking. Your Honor, I would agree with that. It's not an impossible standard, but it should be nearly impossible. And in light of this, he has not met the exacting standard of showing that in light of this alleged new evidence that no reasonable juror would have found him guilty in this case. So I would respectfully request that this court affirm the district court's order in this case. Thank you. Counselor, Mr. Lauer, you have some rebuttal time. Yes, I'm hoping to make four points, but first to address what you just said. It is the rare case where a federal task force investigating a crime comes up with significant and strong, credible evidence that somebody else committed the crime. This is the rare circumstance. And I want to spend just a second talking about what that federal investigation did. Contrary to what counsel said, it was the person who testified, Ronald Perkins, told investigators it was common knowledge that an individual from Haymont Hill, McCoy, had been wrongly convicted for the crime that Haley committed. Bernard McIntyre gave an affidavit indicating he knew Haley from his interactions in the court and buying drugs. And it was Haley and it was Haley's car down the embankment the next day. So there is significant evidence. But the task force investigator testified at the federal evidentiary hearing that they were careful. They didn't know anything about the Haley murder. They were debriefing these individuals as part of the federal indictments and they were corroborating information that they were being given to ensure the veracity of the information they were receiving from these falsehoods. And that's precisely what led them to the information regarding Kali killing Haley. And the state concealed. But their conclusions were somewhat inconclusive, weren't they not? Well, those conclusions were inconclusive because of what the investigator testified to. They were not sure, didn't know the evidence that was presented against McCoy. But their conclusion was unambiguous, that they believed those witnesses to be reliable and those statements to be credible. Additionally, I want to talk just briefly on the remarks that I carefully said were not a confession. There were remarks made during an interaction with Detective Ballard. The statement, the most direct contemporary question I have is whether you're urging a standard of deference to an inconclusive federal investigative report as opposed to the deference where Congress placed it. But Congress and McQuiggan expressly says this. The totality of evidence has to be weighed with respect to Mr. McCoy and whether a reasonable juror would find him guilty. We don't have to prove Kali guilty. Additionally, McQuiggan expressly says that Congress endorsed the actual innocence gateway with regards to our burden is to show by a preponderance of evidence that no juror would find Mr. McCoy guilty beyond a reasonable doubt. And I submit that that's been exceeded here with regards to the information, new evidence not presented by a trial. On the remarks made to Ballard, the contemporaneous notes of Ballard in his felony investigative report is the best way to characterize it. McCoy was the only person, he says, on Joint Appendix 152 not to make incriminating statements. And as Judge Traxler pointed out, you have to corroborate a confession if it even could be determined that, but it wasn't determined that here by Ballard himself based on what he wrote himself. Let me, Ms. Blough, I hate to interrupt you because you're on such a roll. Of course, Your Honor. I do have a question about this confession that you're just talking about. The master judge and the district judge put heavy reliance on the fact that the statements your client made could have been reasonably construed as a confession. My recollection of the testimony that Detective Ballard gave initially at trial was that to simply recite, here were the questions I asked, here are the responses I got. But later on in subsequent hearings following the conviction, he amplified that a little bit more and was asked and testified that he considered the statements and admission that this defendant had committed the crime. So now that confession evidence is even stronger, presuming we consider this later testimony, later evidence, whether it's admissible or not, that the evidence supporting the fact it was a confession is even stronger. So would you comment, am I right, am I wrong? Anything you'd like to say about that? Do you understand what I'm saying? I do. And 29 years later for the first time Ballard amplified this to his opinion that it was a confession. But his opinion doesn't matter to this court's totality review with regards to how reasonable it is. But it's still admissible. And isn't it still evidence we consider in applying slope standard? I mean, I would say that the best indication of Ballard's belief with regards to the statement is what he wrote contemporaneously 29 years ago or over 30 years ago now in his felony investigative report that McCoy did not make incriminating statements in this case. That is the statement contemporaneous with the interaction, his self-serving testimony years later. This is in the report? It's in his felony investigative report, the joint appendix at 154. He says that McCoy did not make incriminating statements during the course of the Wynn interview. That was Ballard's characterization. Now, the state characterized that as a part of only discussing the formal interview once he was arrested in custody. But it strengthens credulity to believe that he would write that McCoy was the only person. The point Judge Traxler was making is that you're relying on after discovered evidence and whatever, and you're relying on post trial evidence. And in this one respect, Ballard's view is more unfavorable to you than it was. In other words, you can look at it as a situation in which you say the state's case diminished over time. But at least in this one respect, you can indicate that the state's case actually increased over time. I mean, it doesn't go all in one direction. I'm saying that the best way to put into perspective Ballard's view of what that interaction was he had with McCoy is what he wrote at the time and what he wrote at the time is reflected in the felony investigative report. I see I'm out of time. If the court will entertain me to make one final point, I don't want to lose sight that there's a cloud over all of us. And that cloud being one of the two investigators, Robert Parker. Testimony in the federal evidentiary hearing made clear that he actively protected the very gang that was later said that Tali was the one responsible for this homicide. He tipped off Miss Howard when Fayetteville police investigators were going through that neighborhood to make drug raids. And that is something that should also be considered and a jury would consider. That also clouds everything in this case. And with that, I respectfully submit to this court that no reasonable juror on the evidence before it could convict Mr. McCoy and that the district court and magistrate should be reversed. Thank you. We thank you. Appreciate your argument. Appreciate both of your arguments and many thanks to our courtroom deputy for a fine job that she did. And we'll take a five minute recess. And then when the court is cleared, we'll come back for conference. Just kind of more stance adjourned. Santa die. That's the United States in front of a court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, William B. Traxler Jr.